1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3

4    SVI, Inc.,                                          **2:16-cv-01098-JAD-NJK**

5              Plaintiff

6    v.                                                  **Order Granting Motion for Leave to Amend and Denying all other Pending Motions as Moot**

7    Supreme Corporation, et al.,

8              Defendants                                [ECF Nos. 8, 12, 17, 27, 28, 30, 42, 58]

9

10          Trolley distributor SVI sues its former trolley manufacturer (Supreme Corp), the company

11   that recently acquired Supreme Corp's trolley-manufacturing division (Double K), and a Double K

12   employee for misappropriation of trade secrets and related claims.  Currently pending before me are

13   SVI's motion for preliminary injunction, defendants' dismissal motions, and related requests by both

14   parties.  I grant SVI's motion for leave to file an amended complaint, so I deny as moot defendants'

15   dismissal motions, SVI's motion for preliminary injunction and motion to expedite, Supreme Corp's

16   motion to strike, and SVI's motion to reconsider the magistrate judge's discovery order.  SVI must

17   file an amended complaint by January 1, 2017, if it can plead true facts to cure the deficiencies that I

18   have outlined in this order.[1]

19                                **Background**

20          Plaintiff SVI Inc., a/k/a/ Specialty Vehicles, Inc. ("SVI") designs and distributes trolley cars[2]

21   manufactured by defendant Supreme Corporation ("Supreme Corp").  Supreme Corp has

22   manufactured SVI's trolleys since 1995.[3]  In May 2016, Supreme Corp announced that it was selling

23   the trolley division of its manufacturing business to defendant Double K, Inc., d/b/a/ Hometown

24

25   _____

26   [1] I find these matters suitable for disposition without oral argument.  L.R. 78-1.

27   [2] ECF No. 1 at ¶ 3.

28   [3] *Id.* at ¶ 4.

Trolley ("Double K"), which also distributes trolley cars.[4]  The proposed sale of Supreme Corp's trolley division allegedly includes assets that are jointly owned by SVI and Supreme Corp and SVI's trade secrets.[5]

According to SVI, Supreme Corp planned to sell their jointly owned assets to competitor Double K "without consulting [with SVI] and with full knowledge that such collusion would serve to harm" SVI.[6]  SVI alleges that the defendants have "colluded in an attempt to combine" to squeeze SVI out of the market.[7]  SVI further alleges that defendant Dustin Pence, who is "an officer, employee, or agent" for Double K, has "disparaged" SVI's business by telling unnamed third persons that SVI cannot fulfill existing or future trolley orders.[8]

SVI asserts fourteen claims for relief and seeks injunctive and declaratory relief and monetary damages.  SVI seeks an order permanently enjoining defendants from using or disseminating its trade-secret information, enjoining the sale of Supreme Corp's trolley division to Double K, and enjoining defendants from "making disparaging statements about [SVI] to anyone."[9]

Shortly after filing its complaint, SVI filed a motion for preliminary injunction and has since moved to expedite that request;[10] Supreme Corp moved to strike SVI's preliminary-injunction motion.[11]  The defendants separately moved to dismiss the complaint, arguing that this court lacks personal jurisdiction over the Double K defendants, that this district is an improper venue, and that

---

[4] *Id.* at ¶¶ 22–23.

[5] *Id.*

[6] *Id.* at ¶ 25.

[7] *Id.* at ¶ 29.

[8] *Id.* at ¶ 10.

[9] Id. at ¶¶ 10(a)–(c).

[10] ECF Nos. 8, 42.

[11] ECF No. 17.

1   SVI's claims are either insufficiently pled or preempted by Nevada's Trade Secrets Act.[12]  SVI

2   responded with a motion for leave to file an amended complaint.[13]  On the heels of these filings, the

3   defendants jointly moved to stay discovery pending resolution of the dismissal motions,[14] which

4   Magistrate Judge Koppe granted on September 14, 2016.  SVI has appealed that order to me.[15]  I first

5   address SVI's motion for leave to file an amended complaint.

6                                   **Discussion**

7   **I.      Motion for leave to amend [ECF No. 30]**

8            **A.       Standards for leave to amend**

9            Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely

10  give leave when justice so requires," but leave to amend may be denied if the proposed amendment

11  is futile.[16]  In determining whether to grant leave to amend, district courts consider five factors: (1)

12  bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5)

13  whether the plaintiff has previously amended the complaint.[17]  "Futility alone can justify the denial

14  of a motion to amend."[18]

15           Rule 8 of the Federal Rules of Civil Procedure requires every complaint to contain "[a] short

16  and plain statement of the claim showing that the pleader is entitled to relief."[19]  While Rule 8 does

17  not require detailed factual allegations, the properly pled claim must contain enough facts to "state a

18

19  _____

20  [12] ECF Nos. 12, 27, 28.

21  [13] ECF No. 30.

22  [14] ECF No. 44.

23  [15] ECF No. 58.

24  [16] *Carrico v. City & Cty of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

25  [17] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (internal citation omitted).

26  [18] *Id.* (Internal citation omitted).

27  [19] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*,
28  556 U.S. 662, 678–79 (2009).

claim to relief that is plausible on its face."[20]  This "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the

speculative level."[21]  In other words, a complaint must make direct or inferential allegations about

"all the material elements necessary to sustain recovery under *some* viable legal theory."[22]  A claim is

facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference

that the defendant is liable for the alleged misconduct.[23]  A complaint that does not permit the court

to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader

is entitled to relief," and it must be dismissed.[24]

### B.   SVI's proposed amended complaint

SVI seeks leave to amend its complaint to add new allegations about events that occurred

after this case was filed and to supplement its existing allegations.[25]  SVI maintains that its initial

complaint is sufficiently pled but admits that, because of the "urgent" nature of this case, the initial

complaint "did not have the factual detail it would have otherwise had if circumstances would have

permitted [SVI] more time to file" suit.[26]  SVI points out that its proposed amended complaint

identifies which assets are jointly owned by SVI and Supreme Corp and which trade secrets were

improperly disclosed and misappropriated by defendants.[27]

---

[20] *Twombly*, 550 U.S. at 570.

[21] *Iqbal*, 556 U.S. at 678.

[22] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[23] *Id.*

[24] *Id.* at 570.

[25] ECF No. 30.

[26] *Id.* at 5.

[27] *Id.* at 6.

1        SVI alleges in its proposed amended complaint that, for twenty years, it and Supreme Corp

2   "ha[d] been in an exclusive, symbiotic, joint, and special business-relationship"[28] during which time

3   the two companies worked together to develop the Supreme Trolley brand, the trolley-testing

4   certification and procedures for government customers, and trolley-manufacturing equipment and

5   tooling (the "trolley assets").[29]  In the course of this relationship, SVI disclosed to Supreme Corp

6   protected information for use in manufacturing SVI's trolleys, including customer lists and

7   preferences; trolley designs, certification, and testing procedures and equipment; order information,

8   including prices, mark-ups, customizations, and warranty obligations; bidding information and

9   strategies; and future orders, prospective clients, and designs.[30]  This information is "not available to

10  the general public, not generally known, and not readily ascertainable by others"[31] and, for twenty

11  years, Supreme Corp agreed to keep this information confidential.[32]  SVI has "also made reasonable

12  efforts to maintain" its secrecy.[33]

13        In summer 2015, SVI expressed its desire to buy-out Supreme Corp's interest in their "joint

14  trolley-business venture;"[34] Supreme Corp "flatly refused" to discuss such a transaction.[35]  On May

15  12, 2016, Supreme Corp told SVI that it had contracted to sell its trolley division—including the

16  allegedly jointly owned trolley assets and "some" of SVI's trade secrets—to SVI's competitor,

17  Double K.[36]  The next day, Supreme Corp produced a confidentiality agreement for SVI to sign that

18

---

19  [28] ECF No. 30-1 at ¶ 8.

20  [29] *Id.* at ¶ 64.

21  [30] *Id.* at ¶ 66.

22  [31] *Id.* at ¶ 69.

23  [32] *Id.* at ¶ 70.

24  [33] *Id.* at ¶ 71.

25  [34] *Id.* at ¶ 15.

26  [35] *Id.* at ¶ 17.

27  [36] *Id.* at ¶ 77.

28

1   would allow Supreme Corp "to provide [SVI] relevant information concerning the Trolley product

2   line" to allow SVI "to develop a valuation to bid against Double K."[37]  SVI signed and returned the

3   non-disclosure agreement that day, along with proof of SVI's ability to fund the transaction, but

4   Supreme Corp never delivered the information to SVI to allow it to bid on the sale.[38]

5        Between May and June 2016, Double K used SVI's protected client information that it had

6   purchased from Supreme Corp to contact five current and prospective SVI clients located in

7   Mississippi, Florida, California, and Nevada and falsely told these clients that SVI was going out of

8   business and that all future trolley orders would need to be placed through Double K.[39]  Two months

9   after this case was filed, Double K published a press release announcing that it had acquired

10  Supreme Corp's trolley-manufacturing line.[40]

11       SVI's proposed amended complaint asserts the same fourteen claims as in its initial

12  complaint: misappropriation of trade secrets and civil conspiracy (against all defendants); business

13  disparagement (against Double K and Pence); three claims for tortious interference with contractual

14  relations (one against each defendant); three claims for tortious interference with prospective

15  economic advantage (one against each defendant); and claims for unjust enrichment, declaratory

16  relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and

17  promissory estoppel (against Supreme Corp).

18       Defendants oppose amendment, arguing that the proposed amendments are futile because this

19  district is an improper venue, that SVI's claims are still either insufficiently pled or preempted by

20  Nevada's Trade Secrets Act,[41] and that amendment would be unfairly prejudicial because they have

21

22

23
    _____

24  [37] *Id.* at ¶ 33.

25  [38] *Id.* at ¶ 37.

26  [39] *Id.* at ¶¶ 85–88.

27  [40] *Id.* at ¶ 40.

28  [41] ECF No. 41.

1  already expended considerable resources defending SVI's initial, wholly conclusory complaint.[42]

2  I first address Supreme Corp's venue argument.

3      **C.**    **This district is the proper venue for SVI's claims.**

4      In diversity cases, venue lies where "all defendants reside, if all defendants reside in the same

5  state" or where a "substantial part of the events or omissions giving rise to the claim occurred."[43]  All

6  of SVI's claims stem from the alleged misappropriation of SVI's trade secrets and the contemplated

7  or actual sale of assets jointly owned by SVI and Supreme Corp.  SVI's work in developing these

8  assets—on which its tort and contract claims are based[44]— presumably originated from SVI's

9  Nevada headquarters, which are located in this district.[45]  And SVI's alleged injuries stemming from

10  defendants' tortious conduct, including the allegedly disrupted current and future business

11  relationships, also presumably occurred in this district, where SVI is based.[46]  Because amendment

12  would not be futile based on improper venue, I next consider the sufficiency of SVI's proposed

13  amended complaint.

14      **D.**    **Adequacy of the allegations in SVI's proposed amended complaint**

15
16          *1.*    *SVI fails to state a claim against Pence or show that this court has personal jurisdiction over him.*

17      SVI's proposed amended complaint is completely devoid of factual allegations to support any

18  claims against Pence, let alone allegations that would allow me to conclude that I have personal

19
20

---

[42] ECF No. 43.

[43] 28 U.S.C. § 1391(b)(1)–(2).

[44] *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (holding that venue for a claim based on breach of contract lies in the place of intended performance rather than the place of repudiation because the place of performance "is determined at the inception of the contract," allowing the parties to anticipate where they may be sued and "is likely to have a close nexus to the underlying events.")

[45] SVI is a Nevada corporation doing business in Clark County, Nevada.  ECF No. 30-1 at ¶ 44.

[46] *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075–76 (9th Cir. 2001) (finding that venue in FDCPA action lied where harm was felt).

jurisdiction over this non-resident defendant, an argument that the Double K defendants raised—and SVI is thus aware of—in their dismissal motion.  SVI conclusorily alleges that Pence colluded with the other defendants to gain access to SVI's trade-secret information[47] and used it to disparage SVI to unnamed third parties on May 12, 2016.[48]  Pence allegedly disrupted SVI's existing and prospective economic relationships with unnamed third parties on unknown dates.[49]  Even as pled in its amended complaint, SVI's claims against Pence would not withstand a dismissal challenge under Rule 12(b)(2) or (6).

### 2. *SVI states a claim for misappropriation of trade secrets against only Supreme Corp.*

The elements of a misappropriation-of-trade-secrets claim in Nevada are (1) the existence of a valuable trade secret; (2) the misappropriation of the trade secret through acquisition, use, disclosure, or nondisclosure of use of the trade secret; and (3) the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose.[50]  "The determination of whether corporate information, such as customer and pricing information, is a trade secret is a question for the finder of fact,"[51] and "not every customer and pricing list will be protected as a trade secret."[52]

SVI states a colorable misappropriation-of-trade-secrets claim against Supreme Corp.  It alleges that its trade secrets include: customer lists and preferences; trolley designs, certification, and testing procedures and equipment; order information, including prices, mark-ups, customizations, and warranty obligations; bidding information and strategies; and future orders, prospective clients,

---

[47] ECF No. 30-1 at ¶¶ 108–09.

[48] *Id.* at ¶¶ 129–131.

[49] *Id.* at ¶¶ 141–145; ¶¶ 157–161.

[50] *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000) (internal citations omitted); NEV. REV. STAT. § 600A.030.

[51] *Id.* at 359.

[52] *Id.*

1    and designs.[53]  All of this information is not generally known or readily ascertainable by others.[54]

2    SVI alleges that it has entrusted this information with Supreme Corp for use in its trolley

3    manufacturing and Supreme Corp agreed to keep and has kept this information confidential, until

4    recently.[55]  And SVI claims that Supreme Corp has misappropriated this information by disclosing

5    and selling it to Double K.  These allegations are sufficient to state a plausible misappropriation-of-

6    trade-secrets claim against Supreme Corp.  But I find that this claim fails as pled against the Double

7    K defendants because SVI does not allege any facts to show that these defendants owed a duty not to

8    use or disclose the protected information or acquired it by improper means or had a reason to know

9    that it was acquired by improper means.

10

11                    ***3.      SVI's civil-conspiracy claim fails because it does not sufficiently allege an
                              unlawful objective.***

12          An actionable civil conspiracy in Nevada "consists of a combination of two or more persons

13   who, by some concerted action, intend to accomplish an unlawful objective for the purpose of

14   harming another, and damages results from the act or acts."[56]  SVI conclusorily alleges that

15   defendants "conspired" and "colluded" to sell Supreme Corp's trolley business—which included

16   SVI's trade secrets and assets jointly developed and owned by SVI and Supreme Corp—to Double K

17   to deprive SVI of its ownership interest in these assets and to eliminate SVI from the trolley

18   market.[57]  To the extent that SVI's civil-conspiracy claim is based on the defendants' alleged

19   misappropriation of SVI's trade secrets, it is preempted by Nevada's Uniform Trade Secrets Act, as

20   discussed *infra* at Section E.  To the extent that SVI's civil-conspiracy claim is based on some other

21   unlawful objective—such as intentional interference with existing or prospective economic

22   _____

23   [53] ECF No. 30-1 at ¶ 66.

24   [54] *Id.* at ¶ 69.

25   [55] *Id.* at ¶ 70.

26   [56] *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1993) (internal citations
27   omitted).

28   [57] ECF No. 30-1 at ¶¶ 18–19.

relationships or breach of contract—it also fails because, as discussed below, each of those claims fails as pled.

### 4.   SVI's business-disparagement claim fails as pled.

To prevail on a claim for business disparagement in Nevada, a plaintiff must show: "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages."[58]  Unlike a defamation claim, a business-disparagement claim requires the plaintiff to show that the defendants' disparaging comments are the proximate cause of the economic loss, which may be shown through a general decline in business.[59]

SVI alleges that, on May 12, 2016, Pence contacted an unnamed SVI customer and told that customer that SVI could not fulfill its trolley orders.[60]  SVI concludes that those statements "have caused, and will continue to cause, special damages to [SVI], such as lost business income, lost opportunities, and a misperception of increased risk."[61]  I find that SVI's business-disparagement claim fails as plead.  SVI does not allege which customer Double K and Pence purportedly contacted, nor does it allege any *facts* to show that this resulted in special damages, i.e., the loss of a business deal, or a general decline in business for SVI.[62]

---

[58] *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 505 (Nev. 2009) (internal citations omitted).

[59] *Id.*

[60] ECF No. ¶¶ 129–132.

[61] *Id.* at ¶ 133.

[62] In the "general allegations" section of the complaint Supreme Corp alleges that Double K contacted SVI customers and prospective customers in Mississippi, Florida, California, and Nevada, but it does not allege that these calls caused it to lose any business.  It is unclear if these are the current and prospective customers on which SVI's business-disparagement claim is based.

1

2
    ### 5.    *SVI's tortious-interference-with-contractual-relations claims also fail as pled.*[63]

3    To prevail on a claim for intentional interference with contractual relations under Nevada

4    law, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the

5    contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual

6    disruption of the contract; and (5) resulting damages.[64]  SVI's intentional-interference-with

7    contractual-relations claims fail at the first step: a valid and existing contract.

8    Claim four appears to be based on the SVI-Supreme Corp relationship.  SVI vaguely alleges

9    that it and Supreme Corp had a "special relationship," the "material terms" of which is evidenced by

10    their "actual conduct, communications, business documents, course of dealings, and course(s) of

11    performance."[65]  Besides Supreme Corp's alleged agreement to keep SVI's trade-secret information

12    confidential, it is unclear from SVI's amended complaint what the terms of the SVI-Supreme Corp

13    contract are, which leaves me unable to tell whether or how the SVI-Supreme Corp contract was

14    actually disrupted.

15    Claims five and six are based on the alleged disruption of SVI's relationships with "existing

16    and potential contractual relationships with [SVI's] customers."[66]  But SVI pleads no facts to show

17    the existence of any valid contract, let alone that those contracts were actually disrupted.

18

19
    ### 6.    *SVI's claims for tortious interference with prospective economic advantage are insufficiently pled.*[67]

20    To prevail on a claim for intentional interference with prospective economic advantage in

21    Nevada, a plaintiff must show: (1) a prospective contractual relationship between the plaintiff and a

22    _____

23    [63] Claims four–six.

24
25    [64] *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989) (citing *Ramona Manor Convalescent Hosp. v. Care Ent.*, 225 Cal. Rptr. 120, 124 (Cal. Ct. App. 1986)).

26    [65] ECF No. 30-1 at ¶ 63.

27    [66] *Id.* at ¶ 147.

28    [67] Claims seven–nine.

third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.[68]  A prospective contractual relationship "must be something presently expected and of pecuniary value to the plaintiff."[69] "[A]ctual harm] is not satisfied when the pleadings indicate that the harm [that] occurred could just as easily have occurred due to acts other than those of the Defendant."[70]  In other words, the plaintiff must show that he "would have been awarded the contract but for the defendant's interference."[71]

SVI conclusorily alleges that Double K "intentionally acted, intended, and designed its dealing in the purchase of [Supreme Trolley's] business to disrupt [SVI's] prospective economic advantages"[72] and that SVI "has lost and will continue to lose its economic advantages" as a result.[73] This is wholly insufficient to state a claim under *Iqbal* and *Twombly*.[74]  The same goes for SVI's claim against Supreme Corp.  SVI fails to allege any facts to show the existence of any prospective contractual relationship or that SVI would have been awarded the prospective contract but for Supreme Corp's interference.  SVI also fails to allege any facts to show that Supreme Corp's refusal to continue to fill SVI's trolley orders and, by extension, any interference that may have caused, was not privileged.  For these reasons, claims seven, eight, and nine fail as plead.

---

[68] *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).

[69] *Burson v. State of Nev.*,1992 WL 246915, *4 (D. Nev. July 20, 1992).

[70] *Roche v. Audio Visual Servs. Grp., Inc.*, 2011 WL 2971034, *5 (D. Nev. July 20, 2011).

[71] *Bally Tech., Inc., v. Bus. Intelligence Sys. Solutions*, 2012 WL 3656498, *4 (D. Nev. Aug. 23, 2012).

[72] ECF No. 30-1 at ¶ 153.

[73] *Id.* at ¶ 154.

[74] In the lengthy "general allegations" section of its complaint, SVI alleges that Double K contacted SVI clients James Pervis, Limousines of South Florida, the City of Miami Beach and Maverick Helicoptors, and falsely told them that SVI was going out of business.  *Id.* at ¶¶ 84–88.  But it does not allege—or offer any facts to show—that these clients would have placed orders with SVI but failed to do so as a result of Double K's actions.

1

2        ***7.        SVI states a plausible unjust-enrichment claim.***

3        "Unjust enrichment occurs 'when ever [sic] a person has and retains a benefit which in equity

4   and good conscience belongs to another.'"[75]  "An action based on a theory of unjust enrichment is not

5   available when there is an express, written contract, because no agreement can be implied when there

6   is an express agreement."[76]

7        SVI alleges that Supreme Trolley "accepted and retained the benefit of [SVI's] investment of

8   time and money to develop the Supreme Trolley brand and the trolley assets," including "the testing,

9   the propriety trolley-manufacturing equipment, and [SVI's] trade secret information."[77]  As discussed

10  *infra* at section E, SVI's unjust-enrichment claim is preempted by Nevada's Uniform Trade Secrets

11  Act to the extent that it is based on misappropriation of SVI's trade secrets.  To the extent that SVI's

12  unjust-enrichment claim is based on the trolley assets, it is adequately pled and alternative pleading

13  is permitted under FRCP 8(d).

14        ***8.        SVI's declaratory-relief claim is duplicative.***

15        As pled, SVI's declaratory-relief claim is wholly duplicative of its claims for

16  misapporpriation of trade secrets, unjust enrichment, and breach of contract.  SVI's declaratory-relief

17  "claim" is thus not a separate cause of action; it is better construed as a remedy for SVI's substantive

18  claims, and it rises and falls with them.

19        ***9.        Breach of contract***

20        To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1) the

21  existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the

22  breach.[78]  As the Nevada Supreme Court has explained, the plaintiff generally has the burden of

---

[75] *Unionamerica Mortg. and Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (internal citation omitted).

[76] *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (internal citation omitted).

[77] ECF No. 30-1 at ¶ 171.

[78] *Richardson v. Jones*, 1 Nev. 405 (1865).

1   pleading and proving that it fulfilled conditions precedent in order to recover on a breach-of-contract

2   claim.[79]

3       SVI alleges that it and Supreme Corp were in "an exclusive, symbiotic, joint, and special-

4   business relationship,"[80] which "gave rise to implied contractual terms and warranties based on their

5   course of dealings and course of performance(s)."[81]  In some places, SVI alleges that the "parties'

6   actual conduct, communications, business documents, course of dealings, and course(s) of

7   performance dictate the material terms of their special relationship,"[82] but in other places that the

8   terms were "expressed in writing."[83]  These allegations are insufficient to show that SVI and

9   Supreme Corp had a valid contract.  They are also insufficient to show a breach, particularly because

10  the terms of the alleged contract are so unclear, or that SVI fulfilled all conditions precedent under

11  the contract.  The only plausible agreement and potential breach as pled is Supreme Corp's alleged

12  agreement not to disclose SVI's trade-secret information.

13       ### 10.    *Breach of the implied covenant of good faith and fair dealing*

14       A claim for breach of the implied covenant of good faith and fair dealing arises when "the

15  terms of a contract are literally complied with but one party to the contract deliberately countervenes

16  the intention and spirit of the contract."[84]  SVI's implied-covenant claim fails because it has not

17  sufficiently alleged the existence of a valid contract.  This claim fails for the additional reason that

18  SVI does not allege that the terms of any contract were literally complied with; it alleges that

19

20

21

--------

22  [79] *Clark Cty School Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95 n.21 (Nev. 2007) (citing NRCP
    9(c) and *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 20–23 (1st Cir. 2001)).

23

24  [80] ECF No. 30-1 at ¶ 8.

25  [81] *Id.* at ¶ 12.

26  [82] *Id.* at ¶ 63.

27  [83] *Id.* at ¶ 183.

28  [84] *Hilton Hotels*, 808 P.2d at 919.

1   Supreme Corp breached the parties' express or implied non-disclosure agreement.[85]  Accordingly,

2   SVI has not pled a plausible claim for breach of the implied covenant of good faith and fair dealing.[86]

3                    ***11.***     ***Promissory estoppel***

4            Promissory estoppel has four elements: (1) the party to be estopped must be apprised of the

5   true facts; (2) he must intend that his conduct be acted on, or must act so that the party asserting

6   estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant

7   of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to

8   be stopped.[87]  SVI alleges that it detrimentally relied on Supreme Corp's promises not to disclose

9   SVI's protected information and that it has "conveyed valuable consideration, and made investments

10  and commitments" so that Supreme Corp's promises should be binding.[88]  SVI fails to allege the

11  content of any specific promises made by Supreme Corp or allege facts to show how it detrimentally

12  relied on those representations.  SVI just conclusorily references the alleged non-disclosure

13  agreements identified in SVI's breach-of-contract claim.  Though difficult to decipher, it appears that

14  SVI is attempting to allege that, even if there is no valid non-disclosure contract, promissory estoppel

15  should be applied to estop Supeme Corp from denying the existence of a non-disclosure agreement

16  because SVI justifiably relied on Supreme Corp's promises to keep the protected information secret.

17       **E.       To the extent that SVI's tort claims are based on the alleged misappropriation of
                    its trade secrets, they fail for the additional reason that they are preempted by
18                  Nevada's Uniform Trade Secrets Act.**

19           The Nevada Uniform Trade Secrets Act "precludes a plaintiff from bringing a tort or

20  restitutionary action 'based upon' misappropriation of a trade secret beyond that provided by" the

21

22

23  _____

    [85] ECF No. 30-1 at ¶ 190.
24
    [86] To the extent SVI intends to assert a claim for tortious breach of the duty of good faith and fair
25  dealing based on Supreme Corp's alleged disclosure of SVI's trade secrets, that claim is also
26  preempted by Nevada's Uniform Trade Secrets Act.

27  [87] *Pink v. Busch*, 691 P.2d 456, 689 (Nev. 1984).

28  [88] ECF No. 30-1 at ¶¶ 196–197.

UTSA.[89]  Where the factual circumstances underlying a plaintiff's tort claims are completely

dependent on facts concerning misappropriation of trade secrets, as many of SVI's tort claims are

currently pled, those claims are barred by the UTSA.[90]  Accordingly, the portions of SVI's claims

alleging civil conspiracy, tortious interference with contractual relations, and unjust enrichment

based on alleged misappropriation of trade secrets are preempted under the UTSA.

### F.   SVI is granted leave to amend to cure the deficiencies that I have outlined in this order.

I recognize that SVI had the benefit of defendants' dismissal motions when it filed the instant

motion for leave to amend, but SVI has not previously been given leave to amend with guidance

from this court, and I am not convinced that it could plead no true set of facts to support itS claims.  I

therefore give SVI one more chance to file an amended complaint curing the deficiencies outlined in

this order, if it can plead true facts to do so, and I deny defendants' dismissal motions as moot.  SVI

has until **January 1, 2017,** to file an amended complaint.

As to its claims against Pence, SVI is cautioned that, should it elect to include claims against

him in its amended complaint, it must plead facts to plausibly show Pence's involvement as to each

claim.  Bald allegations that Pence "colluded" with defendants will not survive a dismissal challenge

under Rule 12(b)(2) or (6).  In addition, the facts necessary to establish each claim must be included

within each claim.  I will not piecemeal together the allegations included in the lengthy "overview"

and "general allegations" sections in connection with the allegations included under each claim to

determine whether SVI has stated a claim against each defendant.  SVI must combine its "overview"

and "general allegations" sections into a single, concise general allegations section and must omit

any redundant or irrelevant allegations.  SVI is reminded that legal conclusions and labels are not

entitled to the presumption of truth on a motion to dismiss under FRCP 12(b)(6), and mere

recitations of elements of a claim will not survive a dismissal motion.

---

[89] *Frantz v. Johnson*, 999 P.2d 351, 357 (Nev. 2000) (citing NEV. REV. STAT. § 600A.090)).

[90] *Id.* at 357 n.3.

1

2

3

**II.      Other pending motions**

     **A.      Motion for preliminary injunction, motion to expedite, and motion to strike [ECF Nos. 8, 42, 17]**

4

5

6

7

8

9

10

11

12

13

     SVI filed a motion for preliminary injunction in connection with its initial complaint,[91] and Supreme Corp moved to strike that request for lack of evidentiary support.[92]  Because I grant SVI's motion for leave to amend, I deny as moot SVI's motion for preliminary injunction and Supreme Corp's motion to strike it.  I note, however, that SVI's motion for preliminary injunctive relief would fail on its merits were I to consider it because it lacks evidence to establish a likelihood of irreparable harm.[93]  Additionally, according to SVI, one of the events that SVI sought to enjoin—the sale of Supreme Corp's trolley division to Double K—has already taken place.  If SVI chooses to reurge this request after it files an amended complaint, its motion must satisfy the standards set forth by the United States Supreme Court in *Winter v. Natural Resources Defense Council*,[94] and it must be supported by the requisite documentary proof.

14

     **B.      Motion to reconsider [ECF No. 58]**

15

16

17

18

19

20

     Finally, SVI appeals Magistrate Judge Koppe's order granting defendants' joint motion to stay discovery until resolution of defendants' dismissal motions.  The transcripts from that hearing reflect that the magistrate judge ordered the parties to file a proposed discovery plan within 14 days of an order resolving those motions, unless that order resulted in the dismissal of the case.  Because this order resolves those motions without resulting in a dismissal of this case, the stay is no longer in effect, SVI's appeal of the magistrate judge's discovery order is moot, and I deny it on that basis.[95]

21

22

[91] ECF No. 8.

23

[92] ECF No. 17.

24

25

[93] The supporting declaration conclusorily states that SVI will "continue to suffer irreparable harm to its reputation and trade secrets because of the conduct of [d]efendants."  ECF No. 8-1 at ¶ 24.

26

[94] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

27

28

[95] Even were I to consider SVI's motion on its merits, I would deny it because SVI has not carried its burden to show that the magistrate judge's ruling was clearly erroneous or contrary to law.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SVI's motion for leave to file an amended complaint **[ECF No. 30] is GRANTED**.  **SVI must file an amended complaint by January 1, 2017.**

IT IS FURTHER ORDERED that **SVI's motion for preliminary injunction [ECF No. 8], motion to expedite [ECF No. 42] and motion to reconsider [ECF No. 58] are DENIED as moot.**

IT IS FURTHER ORDERED that **defendants' dismissal motions [ECF Nos. 12, 27, 28] and Supreme Corp's motion to strike [ECF No. 17] are DENIED as moot.**

Dated this 12th day of December, 2016.

_____
Jennifer A. Dorsey
United States District Judge