# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SVI, Inc., | 2:16-cv-01098-JAD-NJK |
| Plaintiff | **Order Granting Plaintiff's Motion to Strike Notice; Granting in Part Motion to Dismiss Under FRCP 12(b)(2); Denying Motions to Dismiss Under FRCP 12(b)(3); and Granting in Part Motions to Dismiss Under FRCP 12(b)(6)** |
| v. | |
| Supreme Corporation., et al., | |
| Defendants | [ECF Nos. 70–72, 78] |

SVI, Inc. and Supreme Corporation entered into a verbal joint-venture agreement to develop, manufacture, and sell a line of trolleys. The parties performed their respective duties under the agreement for 20 years until Supreme unilaterally sold the joint venture to a direct competitor, Double K, Inc. SVI sues Supreme, Double K, and Double K's officer Dustin Pence on numerous claims arising out of the sale.[1]

The defendants moved to dismiss SVI's original complaint and SVI moved for leave to amend.[2] In deciding these motions, I outlined the deficiencies in SVI's proposed amended complaint, granted it leave to amend if it could plead true facts to cure the deficiencies, and denied the defendants' dismissal motions as moot.[3] SVI filed its amended complaint.[4] The defendants now move to dismiss the amended claims on the grounds that the court lacks personal jurisdiction over Double K and Pence, venue is improper, SVI fails to state claims upon which relief can be granted, and SVI exceeded the scope of my leave order.[5] Supreme also filed a

---

[1] ECF No. 65.

[2] ECF Nos. 12, 27, 28 (motions to dismiss), 30 (motion to amend).

[3] ECF No. 62.

[4] ECF No. 65.

[5] ECF Nos. 66, 70–72.

"notice" seeking relief similar to its motions to dismiss; SVI moves to strike that notice.[6]  For the reasons explained below, I grant SVI's motion to strike Supreme's notice; I grant Pence and Double K's motion to dismiss for lack of personal jurisdiction under FRCP 12(b)(2) in part as to Pence; I deny the defendants' motions to dismiss for improper venue under FRCP 12(b)(3); and I grant the defendants' motions to dismiss for failure to state a claim under FRCP 12(b)(6) in part as to certain claims or select portions of claims.

## Background

SVI, Inc. entered into a verbal joint-venture agreement with Supreme Corporation in 1995 for the purpose of developing, manufacturing, and selling a line of trolleys under the name "Classic American Trolley."[7]  SVI is a family owned business that has distributed, marketed, and sold trolleys for several generations.[8]  Prior to the joint venture, Supreme manufactured truck bodies, armored vehicles, and busses, but had no sales experience or experience manufacturing trolleys.[9]  SVI supplied the joint venture with sales, marketing, distribution, customers, designs, pricing information and strategies, and construction techniques and specifications while Supreme supplied the manufacturing arm.[10]

Both entities worked in furtherance of their joint-venture agreement from 1995 until approximately 2012 when Supreme underwent a series of management changes.[11]  SVI continued to perform its joint-venture duties during and after the changes, but Supreme's performance

---

[6] ECF Nos. 66 (notice), 78 (motion to strike).

[7] ECF No. 65 at ¶ 14.  The information in this section is culled from SVI's first amended complaint, provided only for context, and should not be construed as a statement of facts.

[8] *Id.* at ¶ 9.

[9] *Id.* at ¶¶ 12, 13.

[10] *See id.* at ¶¶ 15, 19.

[11] *Id.* at ¶¶ 39–40.

deteriorated.[12]  SVI eventually offered to buy Supreme's interest in the joint venture,[13] but Supreme rejected the offer.[14]  One year later, Supreme sold the entirety of the joint venture's trolley business to Double K, Inc., a direct competitor of SVI and the SVI-Supreme joint venture.[15]  The sale included the joint venture's assets, among which were trade secrets and confidential information that SVI had provided Supreme to be used in furtherance of the joint venture.[16]  SVI was not consulted about the sale and did not benefit from it.[17]

      After accepting Double K's purchase offer, Supreme refused to accept any new trolley-related orders from SVI despite the joint venture's commitments to existing customers.[18]  Before the sale was publicly announced but after SVI had filed and served its original complaint on the Double K defendants, Double K told trolley dealers to inform their clients that Double K was taking over SVI's business.[19]  It also contacted SVI's government-procurement client in Mississippi and informed him that SVI was going out of business and to place all future orders with Double K.[20]  Double K made the same statements to two of SVI's clients in Florida and another in Nevada.  It also "took over" a confidential bid for a substantial contract in California.[21]

---

[12] *Id.* at ¶¶ 40, 46.

[13] *Id.* at ¶ 42.

[14] *Id.* at ¶¶ 44, 46.

[15] *Id.* at ¶¶ 51–52.

[16] *See id.*

[17] *See id.* at ¶ 53.

[18] *Id.* at ¶ 54.

[19] *Id.* at ¶ 70.

[20] *Id.* at ¶ 84.

[21] *Id.* at ¶¶ 48, 83.

SVI's original and proposed amended claims were deficient, so I granted it leave to amend and denied the defendants' then-pending dismissal motions.[22] After SVI filed its amended complaint, Supreme filed a "notice" informing the court that the pleading was untimely and otherwise infirm.[23] Two weeks later, Supreme filed formal motions to dismiss.[24] SVI moves me to either strike Supreme's "notice" or to deem it Supreme's only permissible motion to dismiss.[25] For their part, the defendants move to dismiss most of SVI's claims on the grounds that this court lacks personal jurisdiction over Pence and Double K, this district is an improper venue for SVI's claims, SVI failed to state claims on which relief may be granted, and SVI exceeded the scope of leave to amend by adding three new claims.[26]

**A.     SVI's motion to strike Supreme's redundant "notice"**

When SVI filed its amended complaint after the deadline that I gave it to amend,[27] Supreme filed a "notice" informing the court of that fact and providing a rough outline of other issues it says require dismissal of the amended claims.[28] Supreme filed formal dismissal motions two weeks later.[29] SVI moves me to strike Supreme's notice or treat it as a motion and disregard Supreme's formal motions because the notice seeks relief like a motion.[30] Supreme could—and

---

[22] ECF No. 62.

[23] ECF No. 66.

[24] ECF Nos. 70, 71.

[25] ECF No. 78.

[26] ECF Nos. 70–72.

[27] ECF No. 62 at 18.

[28] ECF No. 66.

[29] ECF Nos. 70, 71.

[30] ECF No. 78.

should—have raised all of its dismissal arguments in a single motion.[31]  Supreme's "notice" missive is redundant of its formal dismissal motions and the rules of this court do not contemplate such a vehicle for the purposes Supreme used it.  I therefore grant SVI's motion to strike, instruct the Clerk of Court to strike Supreme's notice (ECF No. 66), and disregard the contents of the notice.

## B.    Pence and Double K's motion to dismiss under FRCP 12(b)(2)

Double K is a Wisconsin corporation and Pence is a Wisconsin resident.[32]  These defendants urge me to dismiss the claims against them under FRCP 12(b)(2), arguing that SVI has not made a prima facie showing that this court has jurisdiction over them.[33]

The due-process clause of the Fourteenth Amendment limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[34]  As the United States Supreme Court explained in the pathmaking *International Shoe* opinion, "[a]lthough a non-resident's physical presence within the territorial jurisdiction of the court is not required" for the exercise of personal jurisdiction, "the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial

---

[31] Supreme filed its formal motion to dismiss twice: first under the event for a motion under FRCP 12(b)(3), ECF No. 70, and second under the event for a motion under FRCP 12(b)(6). ECF No. 71.  By "single motion" I do not mean that Supreme erred in double filing its formal dismissal motion; Supreme followed LR 2-2(b)'s requirements when it did so.  Where Supreme erred was filing a "notice" previewing its dismissal arguments and then a formal dismissal motion expounding on those arguments.

[32] ECF No. 65 at ¶¶ 95, 98.

[33] ECF No. 72 at 6–9.

[34] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

justice.'"[35]  "[T]he defendant's conduct and connection with the forum State [must be enough] that he should reasonably anticipate being haled into court there."[36]

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the forum state are so continuous and systematic" that they are "essentially at home" there.[37]  Specific (or case-linked) jurisdiction, on the other hand, depends on an "activity or an occurrence that takes place in [or is purposely directed at] the forum State and is therefore subject to the State's regulation."[38]  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[39]  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that the court has jurisdiction over the defendant.[40]

### 1.  This court lacks general jurisdiction over Pence and Double K.

SVI argues that general jurisdiction exists because: (1) Double K-manufactured trolleys have been used in Lake Tahoe, Nevada, for the last 12 years; (2) Double K states on its website that its trolleys service customers in Nevada; and (3) Double K "continuously promotes and sells its products through its dealer, Creative Bus, in Las Vegas, Nevada."[41]  "In evaluating general jurisdiction, . . . . [courts] consider, among other factors, 'whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for

---

[35] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[36] *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

[37] *Goodyear Dunlop Tires Oper. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and quotations omitted).

[38] *Id.*

[39] *Id.* (internal citations and quotations omitted).

[40] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

[41] ECF No. 80 at 8.

service of process, holds a license, or is incorporated there."[42] "It is the nature and extent of the contacts that determines whether they are 'substantial' or 'continuous and systematic.'"[43] "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence."[44]

By focusing only on Double K, SVI tacitly admits that I don't have general jurisdiction over Pence. Examining SVI's evidence and allegations about Double K, I find that the company doesn't have a significant volume of sales, economic impact, physical presence, or integration into Nevada's regulatory or economic markets. I therefore conclude that Double K's contacts with Nevada are not "'so continuous and systematic' as to render [it] essentially at home'" here.[45]

**2.    This court has specific jurisdiction over Double K, but not Pence.**

SVI's argument that this court has personal jurisdiction over Pence is easily disposed of: SVI's allegations and evidence concerning Pence are non-existent as to his contacts with Nevada or a Nevada resident.[46] SVI argues that Double K has purposefully availed itself of the privilege of conducting activities in Nevada through its affirmative conduct of promoting its products here, soliciting business from Nevada customers, and developing its business in Nevada.[47] These

---

[42] *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

[43] *Id.*

[44] *Id.*

[45] *See Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Oper.*, 564 U.S. at 919).

[46] SVI's reliance on *Consipio Holding BV v. Carlberg*, 282 P.3d 751 (Nev. 2012), is misplaced. That was a derivative action and concerned whether a Nevada corporation's nonresident officers and directors could be subject to suit in Nevada for allegedly causing direct harm to their Nevada corporation. *Consipio*, 282 P.3d at 756 (stating that "[o]fficers or directors who directly harm a Nevada corporation are affirmatively directing conduct toward Nevada, and by doing so can be subject to personal jurisdiction even without a director consent statute").

[47] ECF No. 80 at 9.

contacts consist of the 12-year-old sale of three trolleys to the Tahoe Area Regional Transit,[48]

contacting SVI's client Nevada Maverick Helicopters,[49] and having a dealer (Creative Bus) that

provides "full service sales and service location" in Las Vegas, Nevada.[50]

I do not consider the first and third alleged contacts because SVI's claims against Double

K do not arise from a years-old trolley sale or the fact that a trolley dealer sells Double K-

manufactured trolleys in Nevada. This leaves the second event—contacting SVI's Nevada

client—that SVI's corporate representative attests occurred in June 2016.[51] Double K argues that

I should not consider this event because it occurred after SVI filed its original complaint in this

action,[52] and post-complaint events do not count for the purposes of specific jurisdiction.[53]

Double K finds support for this proposition in *Menalco, FZE v. Buchan*, where District Court

Judge Pro explained that, "for specific jurisdiction, the Court does not consider events occurring

after the Complaint is filed to determine whether Defendants are subject to personal jurisdiction

in this action."[54] But *Menalco* is distinguishable because it did not concern conduct that was

alleged in an amended complaint and occurred before that pleading was filed, which is what we

have here. I therefore address the merits of SVI's specific-jurisdiction argument.

Specific jurisdiction is analyzed under a three-prong test:

> (1) the non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully

---

[48] ECF No. 25-1 at 3, n.1.

[49] *Id.* at 5, ¶ 17.

[50] *Id.* at 5, ¶ 19.

[51] ECF No. 25-1 at 5, ¶ 17.

[52] *See* ECF No. 1 (filed on May 16, 2016).

[53] ECF No. 72 at 8.

[54] *Menalco, FZE v. Buchan*, 602 F. Supp. 2d 1186, 1195 (D. Nev. 2009) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990), *Steel v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987)).

avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[55]

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." But if the plaintiff "succeeds in satisfying both of the first two prongs, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."[56]

SVI satisfies the first two prongs. Its claims against Double K sound in tort, so the salient question to ask under the first prong is whether Double K purposefully directed its activity at Nevada.[57] This prong is met because SVI alleges that Double K committed an intentional act (misappropriation of trade secrets) that was expressly aimed at Nevada (Double K called SVI's Nevada client) and caused harm that Double K knows is likely to be suffered in Nevada (SVI is a Nevada entity that operates out of Nevada).[58] The second prong is met because SVI's claims against Double K arise directly out of Double K's alleged purposeful contact with SVI's client in Nevada. The burden thus shifts to Double K to present a compelling case that the exercise of jurisdiction would not be reasonable. Double K offers nothing on this point. I therefore conclude that SVI has established a prima facie case that this court has specific jurisdiction over Double K, but it has not shown that this court has either general or specific jurisdiction over Pence. I therefore dismiss all of SVI's claims against Pence for lack of personal jurisdiction.

---

[55] *Manken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (quoted reference omitted).

[56] *Id.* (quotation marks and quoted reference omitted).

[57] *See id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).

[58] *See id.* at 1058.

9

**C.    Defendants' motions to dismiss under FRCP 12(b)(3)**

The defendants argue that Nevada is an improper venue for SVI's claims and move me to dismiss them under FRCP 12(b)(3).[59] SVI responds that I should reject the defendants' argument on procedural grounds because Supreme unsuccessfully challenged venue under this rule when it moved to dismiss SVI's original complaint.[60] SVI says that the defendants should have moved for reconsideration. When I found that venue was proper before, I did so in the context of ruling on SVI's motion to amend and I denied the defendants' dismissal motions as moot.[61] As a result, I did not consider venue under FRCP 12(b)(3)'s standard. I therefore decline SVI's request to deny the defendants' motion on purely procedural grounds.

Rule 12(b)(3) allows a party to move to dismiss a case for "improper venue." "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)."[62]

Of the three categories set out in § 1391(b), only the latter two apply here:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[63]

---

[59] ECF Nos. 70 at 3–8, 72 at 9–11.

[60] ECF No. 79 at 6.

[61] *Id.* at 18.

[62] *Atlantic Marine Const. Co. Inc. v. U.S. Dist. Ct. for Western Dist. of Texas*, 134 S. Ct. 568, 577 (2013) ("*Atlantic Marine*").

[63] 28 U.S.C. § 1391(b)(2), (3). The first category applies when all of the defendants reside in the same state; the defendants in this case do not all reside in the same state.

After reading the parties' arguments and SVI's amended allegations, I remain satisfied that venue is proper in this district under § 1391(b)(2).[64] SVI's claims center on the alleged misappropriation of trade secrets that originated from SVI in Nevada. A substantial part of the property that is the subject of this action—SVI's trade secrets—is situated in Nevada. A substantial part of the events or omissions giving rise to the claims also occurred in Nevada because that is where SVI was injured by the alleged misappropriation. As the Ninth Circuit noted in *Myers v. Bennett Law Offices*, "at least one court has found that in a tort action, the locus of injury was a relevant factor" in determining whether "a substantial part of the events giving rise to the claim occurred in Nevada."[65] And Nevada is a proper venue for SVI's breach of contract claim because it is the intended place of SVI's performance of its duties in furtherance of the joint-venture agreement.[66] I therefore deny the defendants' motions to dismiss on the basis of improper venue.

## D.    Defendants' motions to dismiss under FRCP 12(b)(6)

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law."[67] At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face."[68] The complaint need not contain detailed factual allegations, but it

---

[64] Supreme argues that, when deciding a motion to dismiss for improper venue under FRCP 12(b)(3), I "need not accept allegations contained in a complaint as true, and may properly consider facts and evidence outside of the pleadings." ECF No. 70 at 5 (citing *Arguenta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)). But the defendants don't offer any extrinsic facts or evidence for me to consider.

[65] *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075–76 (9th Cir. 2001) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867–68 (2d Cir. 1992)).

[66] *C.f. Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (holding that "the spirit" of the venue statute "is better served in this case if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation").

[67] *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983).

[68] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

must contain more than "a formulaic recitation of the elements of a cause of action."[69]  In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party.[70]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[71]  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[72]

The United States Supreme Court's decision in *Ashcroft v. Iqbal* provides a two-step framework for considering the sufficiency of factual allegations subject to a motion to dismiss under FRCP 12(b)(6).  First, I may choose to begin by identifying which of the complaint's factual allegations are no more than "legal conclusions" or "mere conclusory statements," because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[73]  The inquiry then becomes whether the remaining, nonconclusory allegations make it plausible that an actionable claim exists.[74]  Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."[75]

---

[69] *Id.* at 555.

[70] *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[72] *Id.* at 679.

[73] *Id.* at 678, 680.

[74] *Id.* at 681.

[75] *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

## 1. *Misappropriation of trade secrets against Double K*

SVI alleges that Double K misappropriated its trade secrets.[76]  I previously found that SVI stated a colorable claim for misappropriation against Supreme but not against Double K.[77]  SVI amended its claim in an effort to cure this deficiency.[78]  Double K moves to dismiss, bizarrely arguing that this claim is preempted by Nevada's Uniform Trade Secrets Act ("UTSA").[79]  But the UTSA does not preclude misappropriation-of-trade-secrets claims; it governs how those claims can be pursued in this state.  What the UTSA "displaces" are "**conflicting** tort, restitutionary, and **other** laws of this state providing civil remedies for misappropriation of a trade secret."[80]  The UTSA does not displace trade-secret claims.

Double K also argues that SVI still has not alleged facts to show that it misappropriated SVI's trade secrets.  I disagree.  SVI alleges that, after the sale of the Classic American Trolley line from Supreme to Double K, Double K used SVI's trade secrets to contact SVI's customers and inform them that SVI was going out of business, Double K was taking over SVI's business, and trolley orders would have to be made through Double K, not Supreme.[81]  SVI alleges that Double K continued using SVI's trade secrets to contact customers and turn them against SVI even after this defendant was served with SVI's original complaint in this action.[82]  SVI alleges some facts to support these conclusions.[83]  It can be inferred from the alleged facts that, after

---

[76] ECF No. 65 at ¶¶ 117–139.

[77] ECF No. 62 at 8–9.

[78] ECF No. 65 at ¶¶ 117–139.

[79] ECF No. 72 at 14.

[80] Nev. Rev. Stat. § 600A.090(1) (emphasis added).

[81] *See e.g.* ECF No. 65 at ¶¶ 67–70, 99, 114.

[82] *Id.* at ¶ 69.

[83] *See id.* at ¶¶ 82–86.

Double K had been served with SVI's original complaint on May 26, 2016,[84] it was on notice that:

- SVI and Supreme had worked "jointly" on a trolley line that used SVI's "designs," "promotion," "branding," "testing," "distributorship," and "trade-secret information" since 1995.[85]

- SVI "retained" Supreme "to perform the manufacturing" of SVI's designs for SVI's customers.[86]

- And the trolley line that Supreme agreed to sell to Double K included SVI's "assets and information."[87]

It can also be inferred from the alleged facts that Double K likely knew about the SVI-Supreme relationship because Double K was their "direct competitor" and the trolley business is a "highly concentrated market."[88] Despite this notice and alleged knowledge, Double K used the information that it gained in the sale to displace SVI on a valuable bid to a potential client in California,[89] contact SVI's existing customer in Mississippi to inform him that SVI "was going out of business and future orders must be placed through Double K[,]"[90] and similarly contact and misform two of SVI's clients in Florida[91] and another in Nevada.[92]

---

[84] ECF No. 9.

[85] ECF No. 1 at ¶¶ 4, 18–20, 99.

[86] *Id.* at ¶ 19.

[87] *Id.* at ¶ 22.

[88] *Id.* at ¶¶ 21, 23.

[89] ECF No. 65 at ¶ 83.

[90] *Id.* at ¶ 84.

[91] *Id.* at ¶ 85.

[92] *Id.* at ¶ 86.

I find that SVI has stated a colorable claim that Double K used SVI's trade secrets and, at the time of use, "knew or had reason to know that [its] knowledge of the trade secret[s] was" either "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" or "[d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."[93] I therefore deny Double K's motion to dismiss this claim.

### 2. Civil conspiracy

I granted SVI leave to amend its civil-conspiracy claim because it had not sufficiently alleged an unlawful objective.[94] SVI now alleges several unlawful objectives: misappropriation of t rade secrets, intentional interference with the SVI-Supreme joint-venture agreement, and intentional interference with the contracts between SVI and its existing customers using misappropriated information.[95] Because the first and last unlawful objectives depend on the information at issue being deemed trade secrets, they are precluded by the UTSA.[96] The unlawful objective of intentional interference with the SVI-Supreme joint-venture agreement is not preempted by the UTSA. I therefore dismiss the portions of SVI's civil-conspiracy claim against Supreme and Double K alleging the unlawful objectives of misappropriation and intentional interference with SVI's contractual relations with its customers, but the rest of this claim will proceed.

### 3. Business disparagement

SVI's proposed business-disparagement claim was conclusory, so I gave SVI leave to amend if it could plead specific facts to show that Double K's actions resulted in special

---

[93] Nev. Rev. Stat. § 600A.030(2)(c)(2)(II), (III).

[94] ECF No. 62 at 9–10.

[95] ECF No. 65 at ¶¶ 143–44.

[96] *See Frantz v. Johnson*, 999 P.2d 351, 357–58 (Nev. 2000) (explaining that "[t]he plain language of NRS 600A.090 precludes a plaintiff from bringing a tort or restitutionary action 'based upon' misappropriation of a trade secret beyond that provided by the UTSA").

damages.[97]  Double K contends that SVI's amended claim does not cure this defect.[98]  SVI responds that it cured this defect because it alleges that it "lost several potential contracts, including the California Transportation Department contract."[99]

But SVI alleges that it lost the California contract because Double K bid on that contract using information that SVI had developed for the SVI-Supreme joint venture, not because of any alleged disparagement.[100]  The other allegations that SVI directs me to are bald statements that Double K's wrongful conduct harmed SVI and that Double K committed bad acts.[101]  This claim remains too conclusory, so I dismiss SVI's business-disparagement claim.

### 4.    *Tortious interference with contractual relationships*

I granted SVI leave to amend its claims for tortious interference with contractual relations because it had not adequately pled a valid and existing contract with a third party.[102]  SVI amended its claims and now alleges that Double K interfered with "certain contractual obligations in place that [Supreme] had with [SVI] [for Supreme] to service [SVI's] existing customers and [that] [SVI] was relying on Sup-Trolley to fulfill existing and future customer orders worth more than $25 million . . . ."[103]  SVI also alleges that Double K interfered with the contractual relationships between SVI and its customers.[104]

These allegations are conclusory and represent almost all of the factual information that can be scraped from the amended pleading to support these claims.  SVI does allege that it had

---

[97] *Id.* at 10.

[98] *See* ECF No. 65 at ¶¶ 151–156.

[99] ECF No. 80 at 16.

[100] *See* ECF No. 65 at ¶¶ 48, 83.

[101] ECF No. 80 at 16 (citing ECF No. 65 at ¶¶ 72, 113–116).

[102] ECF No. 62 at 11.

[103] ECF No. 65 at ¶ 159.

[104] *Id.* at ¶¶ 168, 174.

existing orders from Limousines of South Florida and the City of Miami Beach, but it also specifically alleges that Double K "**attempted** to persuade" those clients to cancel their orders by falsely claiming that SVI "was going out of business."[105] SVI does not explicitly allege that Double K disrupted SVI's contracts with these clients, and this allegation precludes me from inferring that they did. SVI does not allege that it had existing contracts with the two other clients that it identifies—Maverick Helicopters and the procurement officer for the State of Mississippi. Further, SVI alleges that Double K called these clients to dissuade them from placing "future orders" with SVI.[106]

The allegations against Supreme are better. SVI alleges that it had a joint-venture agreement with Supreme going back to 1995 wherein Supreme manufactured and serviced trolleys for the customers that SVI brought to the joint venture.[107] SVI alleges that "every month" it supplied Supreme with "client lists," "pricing, customer orders, preferences/customization, [and] bidding information for future business."[108] Although SVI does not allege the who, what, and when of the contracts, I can reasonably infer from these allegations and others that contracts existed and that Supreme was aware of them and their details. I can also infer from these allegations that contracts were disrupted and that the disruption actually damaged SVI because SVI alleges that Supreme unilaterally sold the joint venture's business to Double K. I therefore dismiss SVI's claim for tortious interference with contractual relations against Double K, but not against Supreme.

### 5.    *Tortious interference with prospective economic advantage*

I granted SVI leave to amend its tortious-interference-with-prospective-economic-advantage claims because it had not sufficiently alleged facts to show: (1) the existence of any

---

[105] *Id.* at ¶ 85 (emphasis added).

[106] *Id.* at ¶¶ 84, 86.

[107] ECF No. 65 at ¶¶ 14, 19.

[108] *Id.* at ¶ 47.

17

prospective contractual relationship; (2) that SVI would have been awarded a contract but for the defendants' actions; or (3) that Supreme's refusal to fulfill future trolley orders was not justified or privileged.[109] The defendants move me to dismiss SVI's amended claims, arguing that it failed to cure these deficiencies.[110] SVI responds that it did cure the deficiencies and directs me to several allegations in its amended pleading.[111]

SVI alleges that Double K contacted and gave misinformation about SVI to two of SVI's clients in Florida, one of its clients in Nevada, and another of its clients in Mississippi. But SVI does not allege that it presently expected, at the time of the alleged contact, anything of value from the Nevada and Mississippi clients. SVI does not allege any facts from which I can infer that SVI had such an expectation regarding those clients. As for its Florida clients, SVI alleges that Double K "**attempted** to persuade" those clients to cancel their orders by falsely claiming that SVI "was going out of business."[112] SVI alleges that Double K tortiously interfered with existing contracts, but this is a legal conclusion, not a fact. SVI does not allege any fact about the existing contracts (e.g., what were they for, who were they with, or when they were entered into).

The allegations against Supreme are no better. Although Supreme's knowledge of pending (i.e., already made) orders for service and trolleys can be inferred from SVI's allegations against Supreme, the existence of SVI's prospective contractual relationships cannot. SVI does not allege that any of its existing or potential clients were in the process of purchasing a trolley when Supreme unilaterally sold the joint venture to Double K. SVI alleges that Supreme agreed to service the trolleys that it built for SVI's customers, but it is speculative whether those clients will require service. Also speculative is whether SVI has actually been harmed as a result of

---

[109] ECF No. 62 at 11–12.

[110] ECF No. 71 at 12–13; ECF No. 72 at 17–18.

[111] ECF No. 80 at 19–21; ECF No. 79 at 12–15.

[112] *Id.* at ¶ 85 (emphasis added).

Supreme's refusal to honor those service agreements. I therefore dismiss SVI's claims for tortious interference with prospective economic advantage.

### 6. Unjust enrichment

I found that SVI stated a colorable claim for unjust enrichment based on the trolley assets, but to the extent that its claim is about allegedly misappropriated trade-secret information, it is preempted by the UTSA.[113] Supreme points out that SVI's amended claim still references both "Trolley Assets" and "Protected Information."[114] SVI does not offer a reason why it failed to excise "Protected Information" from this claim, but states that "[t]he parties do not dispute that this claim should not give rise to duplicative damages, but alternative theories are permissible."[115] I note that SVI's definition of "Trolley Assets" includes what it contends are trade secrets.[116] Thus, it appears difficult if not impossible to disentangle SVI's alleged trade-secret information from any portion of this claim. I therefore dismiss the entirety of SVI's unjust enrichment claim.

### 7. Breach of contract

SVI's proposed breach-of-contract claim did not adequately allege that SVI and Supreme had a valid contract or that Supreme breached that agreement, and I granted SVI leave to amend if it could plead true facts to cure these defects.[117] SVI now alleges that it entered into a verbal

---

[113] ECF No. 62 at 13.

[114] ECF No. 71 at 12–14.

[115] ECF No. 79 at 15.

[116] SVI defines "Trolley Assets" as "the trolley market-share; the intellectual and tangible property of the trolley joint-venture (e.g., the 'Supreme' brand); the trolley testing certification and procedures as required by government customers (Altoona Testing/certification); confidential trolley designs; trolley-manufacturing equipment and tooling incorporating [SVI's] proprietary designs . . . ." ECF No. 65 at 30 (footnote omitted).

[117] ECF No. 62 at 13–14.

joint-venture agreement[118] with Supreme in 1995 for the purpose of developing, manufacturing, and selling a line of trolleys under the name "Classic American Trolley."[119] SVI supplied the joint venture with sales, marketing, distribution, customers, designs, pricing information and strategies, and construction techniques and specifications[120] while Supreme supplied the manufacturing arm.[121] SVI alleges that it relied on Supreme's "duties of confidentiality, loyalty and care (at a minimum)" when it shared confidential and trade-secret information with Supreme for the benefit of their joint business enterprise.[122] SVI repeatedly alleges that it performed its duties under the joint venture agreement.[123] SVI alleges that Supreme breached the joint venture agreement when it misappropriated SVI's confidential and trade-secret information (i.e., disclosed it to Double K) and when Supreme unilaterally sold the entirety of the joint venture's business enterprise—and in the process SVI's assets—to Double K.[124] I find that SVI states a colorable claim for breach of contract. I therefore deny Supreme's motion to dismiss this claim.

### 8. *Breach of covenant of good faith and fair dealing*

I gave SVI leave to amend this claim because I found that it had not sufficiently alleged the existence of a valid contract, performance or excuse of performance by SVI, or breach by Supreme.[125] Although SVI cured these defects, I note that it seeks both tort and contractual

---

[118] "A joint venture is a contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Bruttomesso v. Las Vegas Metro. Police Dept.*, 591 P.2d 254, 256 (Nev. 1979).

[119] ECF No. 65 at ¶ 14.

[120] *See id.* at ¶ 15.

[121] *See id.* at ¶ 19.

[122] *See* ECF No. 65 at ¶ 26.

[123] *See e.g.* at ¶¶ 28, 30, 46–48.

[124] *See id.* at ¶ 206.

[125] ECF No. 62 at 14–15.

remedies for Supreme's breach.[126]  To the extent that SVI is attempting to allege a claim for tortious breach of the covenant of good faith and fair dealing arising from the alleged misappropriation, it is preempted by the UTSA.[127]  The portion of the claim alleging tortious breach arising from Supreme's alleged unilateral sale of the joint venture's business, however, is not preempted by the UTSA because it does "not depend on the information at issue being deemed a trade secret . . . ."[128]  I therefore dismiss the portion of SVI's claim for tortious breach of the covenant of good faith and fair dealing arising from the misappropriation of trade-secret information.

### 9.  *Promissory estoppel*

"The doctrine of promissory estoppel, which embraces the concept of detrimental reliance, is intended as a substitute for consideration, not as a substitute for an agreement between the parties."[129]  SVI specifically alleges in this claim that it "has conveyed valuable consideration, and made investments and commitments such that [Supreme's] promises should be binding."[130]  It thus appears that SVI asserts this claim alternatively and in the event it is determined that there was no joint-venture agreement between it and Supreme.  This is not a permissible use of the doctrine.  I therefore dismiss SVI's claim for promissory estoppel.

### 10.  *Declaratory relief*

I previously found that SVI's proposed declaratory relief claim was duplicative of its claims for misappropriation of trade secrets, unjust enrichment, and breach of contract.[131]  SVI's amended claim is identical to its deficient proposed claim except that it also seeks a declaration

---

[126] ECF No. 65 at 30, ¶ 211.

[127] *See Frantz*, 999 P.2d at 357–58.

[128] *See id.* at 357 n.3.

[129] *See Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989).

[130] ECF No. 65 at ¶ 221.

[131] ECF No. 62 at 13.

that SVI and Supreme formed a joint venture in 1995.[132]  This is duplicative of SVI's breach of contract claim.  I therefore dismiss SVI's declaratory relief claim.

### 11. Breach of fiduciary duty and cancellation of trademark registration

SVI's amended complaint contains three new claims for relief: two claims for breach of fiduciary duty against Supreme[133] and a claim to cancel trademark registration against Supreme and Double K.[134]  Supreme moves to dismiss these new claims, arguing that SVI did not have leave to assert them.[135]

There are three ways that a party can amend its pleading: (1) once as a matter of course within 21 days of serving it or the service of a responsive pleading or motion under FRCP 12(b), (e), or (f)[136]; (2) with the written consent of the opposing party[137]; or (3) with leave of court.[138]  SVI amended with leave of court.  But I gave SVI leave to amend only for the narrow purpose of curing the deficiencies in its proposed amended complaint that I outlined in my order[139]; the lack of breach-of-fiduciary-duty or trademark-cancellation claims did not number among the deficiencies.[140]  I therefore dismiss SVI's rogue claims for breach of fiduciary duty and to cancel trademark registration as unauthorized.

---

[132] ECF No. 65 at ¶ 226.

[133] ECF No. 65 at ¶¶ 214–218 (thirteenth cause of action), 232–235 (sixteenth cause of action).

[134] *Id.* at ¶¶ 236–238.

[135] ECF No. 71 at 9–10.

[136] Fed. R. Civ. Proc. 15(a)(1)(A), (B).

[137] *Id.* at 15(a)(2).

[138] *Id.*

[139] ECF No. 62 at 1:16–18.

[140] *See generally id.*

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that SVI's motion to strike Supreme's notice of failure to file **[ECF No. 78] is GRANTED.** The Clerk of Court is directed to **STRIKE Supreme's notice of failure to file [ECF No. 66].**

IT IS FURTHER ORDERED that Pence and Double K's motion to dismiss under FRCP 12(b)(2) **[ECF No. 72] is GRANTED in part:** ALL of SVI's claims against Dustin Pence (Claims 1, 2, 3, 5 and 8) are DISMISSED. The defendants' motion to dismiss under FRCP 12(b)(2) is DENIED in all other respects.

IT IS FURTHER ORDERED that the defendants' motions to dismiss under FRCP 12(b)(3) **[ECF Nos. 70, 72] are DENIED.**

IT IS FURTHER ORDERED that the defendants' motions to dismiss under FRCP 12(b)(6) **[ECF Nos. 71, 72] are GRANTED in part:**

- The portions of SVI's claim for civil conspiracy against Supreme and Double K (Claim 2) alleging the unlawful objectives of misappropriation and intentional interference with SVI's contractual relations with its customers are DISMISSED;

- SVI's claim for business disparagement against Double K (Claim 3) is DISMISSED;

- SVI's claim for tortious interference with contractual relations against Double K (Claim 4) is DISMISSED;

- SVI's claims for tortious interference with prospective economic advantage against Supreme and Double K (Claims 7 and 9) are DISMISSED;

- SVI's claim for unjust enrichment against Supreme (Claim 10) is DISMISSED;

- The portion of SVI's claim for breach of the covenant of good faith and fair dealing against Supreme (Claim 12) alleging tortious breach arising from the misappropriation of trade-secret information is DISMISSED;

- SVI's claim for promissory estoppel against Supreme (Claim 14) is DISMISSED;

- SVI's claim for declaratory relief against Supreme (Claim 15) is DISMISSED;

- SVI's claims for breach of fiduciary duties against Supreme (Claims 13 and 16)

are DISMISSED;

- • SVI's claim to cancel trademark registration against Supreme and Double K (Claim 17) is DISMISSED.

The defendants' motions to dismiss under FRCP 12(b)(6) are DENIED in all other respects.

DATED: May 30, 2017.

_____
Jennifer A. Dorsey
United States District Judge